# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| **In Re:**<br><br>**Mike Terance Tracy,**<br><br>Debtor. | **Bankruptcy Case No. 20-40074-JMM** |

## MEMORANDUM OF DECISION

**Appearances:**

Jeffrey P. Kaufman, Meridian, Idaho, Attorney for Chapter 13 Trustee.

Paul Ross, Burley, Idaho, Attorney for Nancy Kunau.

### *Introduction*

Before the Court is the chapter 13[1] Trustee's ("Trustee") Amended Objection to Claim No. 1. Dkt. No. 208. Dr. Nancy Kunau ("Dr. Kunau") filed Claim Number 1 in this bankruptcy case. Claims Reg. No. 1. On May 3, 2021, Trustee filed an objection to the claim, Dkt. No. 200, and subsequently filed the Amended Objection on May 26, 2021. Dkt. No. 208. Dr. Kunau filed a response to the objection, Dkt. No. 212, and, after

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all Civil Rule references are to the Federal Rules of Civil Procedure, Rules 1–86.

MEMORANDUM OF DECISION − 1

the Court heard oral argument on the Amended Objection on June 29, 2021, the matter was deemed under advisement. Dkt. No. 225.

The Court has considered the parties' submissions as well as the arguments put forth, and this Memorandum Decision sets forth the Court's findings, conclusions, and reasons for its disposition of the objection. Rules 7052; 9014.

### *Facts*

A.    Pre-Petition Events

In April 2015, Kenna Dawn Tracy filed for divorce from Debtor Mike Tracy ("Debtor") in Magistrate Court in Cassia County, Idaho ("the magistrate court"). A partial judgment of divorce was entered in December 2016. A petition to modify child custody and support was filed by Kenna Tracy in March 2019. The magistrate court appointed Dr. Kunau as guardian ad litem in August 2019, in an order that also set forth her various duties and responsibilities. Amended Order for Appointment of Guardian Ad Litem, Dkt. No. 224, Ex. B. In September 2019, the magistrate court appointed an attorney to represent Dr. Kunau in her role as guardian ad litem. Order for Appointment of Attorney for Guardian ad Litem, Dkt. No. 224, Ex. C. The magistrate court's order made Debtor solely responsible for the costs and fees of Dr. Kunau and her attorney. *Id*. Dr. Kunau's appointment as guardian ad litem has never been terminated.

In January 2020, Dr. Kunau filed a motion to reduce to judgment the guardian ad litem fees and costs, as well as her attorney's fees and costs. Dkt. No. 224, Ex. E. The magistrate court entered a partial judgment for fees and expenses in the amount of

MEMORANDUM OF DECISION − 2

$17,303.00, while also prescribing that post-judgment interest accrues as provided by statute. Dkt. No. 224, Ex. F. The judgment lien is secured by Debtor's principal residence. *In re Tracy*, 20-40074-JMM Claims Reg. 1-1, p. 2 (Dr. Kunau's Original Claim), Claims Reg. 1-2, p. 2 (Dr. Kunau's First Amended Claim); Claims Reg. 1-3, p. 2 (Dr. Kunau's Second Amended Claim). *See also* Trustee's Objection to Dr. Kunau's Claim, Dkt. No. 200, p. 2.

B.      The Chapter 7 Bankruptcy Case

On January 28, 2020, Debtor filed a joint chapter 7 petition with his wife, Julia Nelsioni. Dkt. No. 1. Dr. Kunau filed her initial claim in that case on March 25, 2020 in the amount of $17,660.38 for costs and fees incurred as guardian ad litem. Claims Reg. No. 1. This total included the full amount in the judgment, accrued interest on the judgment, and costs incurred after the entry of the judgment but before Debtor filed his chapter 7 petition. Neither the chapter 7 Trustee, nor any other interested party, objected to Dr. Kunau's claim.

C.      *Kunau v. Tracy* Adversary Proceeding

On April 10, 2020, Dr. Kunau filed an adversary proceeding seeking to have the debt owed to her declared nondischargeable pursuant to § 523(a)(5). Dkt. No. 26; *Kunau v. Tracy (In re Tracy)*, 20-08024-JMM at Dkt. No. 1. The Defendant, Debtor Mike Tracy, never appeared. This Court entered a default judgment and order in that adversary proceeding on July 8, 2020, *Kunau v. Tracy (In re Tracy)*, 20-08024-JMM, Dkt. No. 11, and subsequently entered an amended default judgment and order awarding fees and

MEMORANDUM OF DECISION − 3

costs on August 8, 2020. Dkt. No. 17. The default order recognized the "Idaho 5th

District, Cassia County Magistrate Court's appointment of Nancy Kunau as Guardian ad

Litem in that case, along with her appointed legal counsel, both to represent the best

interests of the children, and that such debts incurred within the scope of those

appointments and awarded by that court, are NONDISCHARGEABLE pursuant to

§ 523(a)(5) as against Defendant Mike Terance Tracy." *Id*. (emphasis in original).

D.    The Chapter 7 Case Converts to Chapter 13

On August 28, 2020, Debtor filed a motion to convert the case to one under

Chapter 13, Dkt. No. 81, and an amended motion to convert on September 9, 2020. Dkt.

No. 97. On April 14, 2021, this Court entered an order severing the joint debtors and

bifurcating the case. Dkt. No. 175. On April 15, 2021, this Court entered an order

granting the amended motion to convert Debtor's case to Chapter 13. Dkt. No. 177.

Katheen McCallister was appointed as the Chapter 13 Trustee. *Id*.

Dr. Kunau has never been relieved of her duties as guardian ad litem during the

pendency of the bankruptcy cases and has incurred related costs and fees while the

chapter 7 case was pending. After the case converted to chapter 13, Dr. Kunau amended

her claim to include all post-chapter 7-petition work she performed up to the date of

conversion pursuant to § 1305 in the amount of $30,489.87. The Chapter 13 Trustee

objected to Dr. Kunau's claim, Dkt. Nos. 200 and 208, after which Dr. Kunau amended

the claim once more, seeking a total of $30,100.89. Claims Reg. at 1-3. Trustee

subsequently filed an amended objection. Dkt. No. 208.

MEMORANDUM OF DECISION – 4

To date, Debtor has not attempted to avoid the judicial lien pursuant to § 522(f), nor is it known to what extent that lien may be avoided. Dkt. No. 200, n. 3; Dkt No. 212, ¶ 4.

### *Arguments*

A.    The Chapter 13 Trustee's Objection

Trustee objected to Dr. Kunau's amended claim on multiple grounds. First, Trustee argues that the debt is a secured judgment lien which Debtor has not moved to avoid under § 522(f), rendering § 507(a)(1)(A) inapplicable. Second, Trustee asserts that, to the extent that any portion of the claim is unsecured, that portion is not entitled to priority status under § 507(a)(1)(A) because it is not a domestic support obligation as defined by § 101(14A). Third, the amended claim includes $12,829.49 for various charges that arose after Debtor filed the chapter 7 petition. Thus, Trustee argues that those amounts arose post-petition and are not debts Debtor owed "as of the date of the filing of the petition" as required by § 502(b). Fourth, Trustee asserts that the secured portion bears an annual interest rate higher than the magistrate court's judgment rate pertaining to judgments entered during the July 1, 2019–June 30, 2020 time frame, which was 7.125%.

In other words, Trustee does not dispute Dr. Kunau's claim in full, but instead argues that her claim should be limited to a non-priority claim of $17,660.38, of which the secured portion, if any, shall bear an annual interest rate of 7.125%.

MEMORANDUM OF DECISION − 5

B.    Dr. Kunau's Response to Trustee's Objection

Dr. Kunau concedes that the judgment lien has not been avoided pursuant to

§ 522(f). To the extent that any portion is unsecured, however, she argues that the

unsecured portion is entitled to priority status under § 502(a)(1)(A) as a domestic support

obligation. Dr. Kunau also argues that, because she has never been relieved of her duties

as guardian ad litem in the underlying state court case during the pendency of the

bankruptcy cases, she is entitled to assert a claim to include all post-petition work she

performed up to the date of conversion pursuant to § 1305 for consumer debt that arose

after the date of the order for relief. Finally, Dr. Kunau asserts that § 502 permits such

claims to be treated "as if such claim had arisen before the date of the filing of the

petition."

### *Analysis and Disposition*

A.    Objections to Proofs of Claim Generally

A proof of claim executed in accordance with the Federal Rules of Bankruptcy

Procedure constitutes prima facie evidence of the validity and amount of the claim, and

the claim shall be deemed allowed unless an interested party objects. Rule 3001(f);

§ 502(a). If such an objection is made, the Court, after notice and a hearing, shall

determine the amount of such claim as of the date of the filing of the petition. § 502(b).

The objecting party bears the burden to produce evidence sufficient to negate the

prima facie validity of the filed claim. *In re Gray*, 522 B.R. 619, 625 (Bankr. D. Idaho

2014). If the objector succeeds and sufficiently produces evidence to negate the validity

MEMORANDUM OF DECISION – 6

of the claim, the claimant must demonstrate by a preponderance of the evidence that the

claim deserves to share in the distribution of the debtor's assets. *In re Gray*, 522 B.R. at

625 (citing *Spencer v. Pugh (In re Pugh)*, 157 B.R. 898, 901 (9th Cir. BAP 1993)).

B.      Secured Status of Claim for Pre-Chapter 7-Petition Services

        Priority status for claims under § 507(a)(1)(A) is limited to unsecured claims for

domestic support obligations. Here, it is undisputed that the judgment lien obtained by

Dr. Kunau is a secured debt and that Debtor has not moved to avoid the lien under

§ 522(f). Dkt. Nos. 200 and 212. The magistrate court entered a judgment in the amount

of $17,303.00 on January 3, 2020, and provided that post-judgment interest would accrue

at the statutory rate, which, during the relevant time period, was then 7.125%. Debtor

filed his chapter 7 petition on January 28, 2020. Between those dates, Dr. Kunau incurred

fees for her guardian ad litem work in the amount of $272.94 that was not included in the

magistrate court's judgment. Claims Reg. 1-1 and 1-3. Interest had also accrued on the

judgment in the amount of $84.44 between January 2, 2020 and January 28, 2020. Claims

Reg. 1-1 and 3-1. Accordingly, Dr. Kunau's claim will be allowed as a secured claim in

the amount of $17,387.44.[2]

---

[2] Dr. Kunau argues that should the lien be avoided under § 522(f), the debt would then be unsecured and
entitled to priority status as a domestic support obligation pursuant to § 507(a)(1)(A). That issue is not
presently before the Court. To date, Debtor has not attempted to avoid the lien, therefore, the Court will
not speculate whether the debt, if unsecured, would be a domestic support obligation. Nonetheless, part of
the pre-petition debt is unsecured, and the Court will address whether that unsecured portion is a domestic
support obligation in section C below.

MEMORANDUM OF DECISION – 7

C.      Priority Claim Status for Unsecured Portion of the Claim for Pre-Petition Services

Next, the Court must determine whether the remaining unsecured portion of Dr.

Kunau's claim for pre-petition services, totaling $272.94, is entitled to priority status

under § 507(a)(1)(A) as a domestic support obligation.

Unsecured claims for domestic support obligations, should they be deemed

allowed, receive high priority status under § 507(a). "Domestic Support Obligation" as

used in § 507, is defined by § 101(14)(A) which, in relevant part, provides:

> (14A) The term "domestic support obligation" means a debt that accrues
> before, on, or after the date of the order for relief in a case under this title,
> including interest that accrues on that debt as provided under applicable
> nonbankruptcy law notwithstanding any other provision of this title, that
> is—
>           (A) owed to or recoverable by—
>                     (i) a spouse, former spouse, or child of the debtor or such
>                     child's parent, legal guardian, or responsible relative; or
>                     (ii) a governmental unit[.]

Dr. Kunau, at bottom, argues she is a legal guardian within the definition of

§ 101(14A). Recall, this Court entered a default order and judgment during the pendency

of the chapter 7 case which provided that Dr. Kunau's claim was nondischargeable

pursuant to § 523(a)(5), which excepts from discharge any debt for a domestic support

obligation. "Domestic support obligation" as used in § 523(a)(5) also utilizes the

definition found in § 101(14)(A).

Dr. Kunau argues that principles of res judicata apply and bar Trustee from

disputing her claim as a domestic support obligation because of the default judgment

entered in the adversary proceeding. Before getting to the merits of Trustee's objection

MEMORANDUM OF DECISION − 8

and Dr. Kunau's response, the Court will first address the res judicata argument. If res judicata applies, the Court need not determine whether Dr. Kunau's claim is in fact a domestic support obligation.

    *1.*    *Res Judicata and Collateral Estoppel*

    Dr. Kunau's res judicata argument is twofold. First, she argues that, because neither the chapter 7 trustee nor any other interested party objected to her claim during the pendency of the chapter 7 case prior to conversion, her claim was deemed allowed and should receive priority status. She contends res judicata precludes Trustee from challenging the status or priority of that claim. Second, Dr. Kunau argues that, should Trustee's objection be allowed to proceed, the default judgment entered in the adversary proceeding that excepted the debt from discharge under § 523(a)(5) as a domestic support obligation should be given preclusive effect by this Court.

    *a.*    *Res Judicata and Collateral Estoppel Doctrines in General.*

    Res judicata protects against "the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Taylor v. Sturgell*, 553 U.S. 880, 893, 128 S. Ct. 2161, 2172, 171 L.Ed.2d 155 (2008) (quoting *Montana v. United States*, 440 U.S. 147, 153–154, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979)). This interest, however, must be harmonized with the deeply rooted belief of our nation's history and traditions that all parties deserve a fair opportunity to be heard at their own day in court.

MEMORANDUM OF DECISION − 9

Although, the terms "res judicata," "collateral estoppel," "claim preclusion," and "issue preclusion" are often used interchangeably, "[t]he Supreme Court treats the Restatement (Second) of Judgments as the authoritative statement of federal issue preclusion doctrine." *Cunningham v. Kinini (In re Kinikini)*, No. 19-00134-TLM, 2019 WL 4580364, at *3 (Bankr. D. Idaho Sept. 20, 2019) (quoting Frye v. Excelsior College (In re Frye), 2008 WL 8444822, at *4 (9th Cir. BAP 2008)). That authority speaks of res judicata as "claim preclusion" and of collateral estoppel as "issue preclusion." *United States v. Mendoza*, 464 U.S. 154, 159, 104 S. Ct. 568, 571, 78 L. Ed. 2d 379 (1984) (citing *Restatement (Second) of Judgments* § 27 (1982)). As such, this Court will employ those terms.

The doctrines of claim and issue preclusion define the preclusive effect of a judgment, and the normal rules of each apply to bankruptcy court decisions. *Katchen v. Landy*, 382 U.S. 323, 334, 86 S. Ct. 467, 15 L. Ed. 2d 391 (1966). Claim preclusion precludes successive litigation of the same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. *New Hampshire v. Maine*, 532 U.S. 742, 748, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001). Issue preclusion, on the other hand, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue recurs in the context of a different claim. *Id*. at 748–749.

It is this framework that the Court now turns to Dr. Kunau's two-part res judicata argument, each addressed in turn.

MEMORANDUM OF DECISION − 10

    b.  *Is the lack of an objection to Dr. Kunau's claim in the chapter 7 case entitled to preclusive effect such that Trustee cannot now raise an objection?*

First, under either claim or issue preclusion, the fact that no party, including the chapter 7 trustee, objected to the claim does not, in and of itself, preclude the Chapter 13 Trustee or any other interested party from now objecting. Nothing in § 502 or Rule 3007 requires an interested party to file an objection to a claim within a certain period of time after the filing of the petition. Rather, an objection must simply be served 30 days before a hearing on the objection or any deadline for the claimant to request a hearing. Rule 3007(a)(1). No party has argued that any such deadline has passed in this case. The Court declines to give creditors such a broad sword in striking down claims objections and subverting the plain text of the Code because an interested party *could* have brought an objection earlier, but did not, where the time for objection has not yet lapsed, even in a converted case such as this one.[3] Thus, the Court will not permit Dr. Kunau to raise res judicata as a means to preclude any parties from raising an objection based solely on the fact that no parties objected during pendency of the chapter 7 case.

---

[3] The effect of such a determination would have far-reaching and vexatious consequences. Extensive litigation would result to determine the appropriate amount of time a trustee is permitted to wait before objecting to a proof of claim before res judicata takes effect. The Court would be substituting its own will in place of the plain text of the Code and congressional intent. That result cannot stand.

MEMORANDUM OF DECISION − 11

       c.     *Is the finding that the debt is a domestic support obligation in the adversary proceeding entitled to preclusive effect?*

Trustee is not objecting to Dr. Kunau's claim in its entirety. Rather, she argues that Dr. Kunau's claim is not a domestic support obligation and thus is not entitled to high priority status.

Recall that Dr. Kunau sought and successfully obtained a default judgment in the adversary proceeding declaring that the debt owed to her is nondischargeable pursuant to § 523(a)(5). In other words, the default judgment effectively established Dr. Kunau's debt as a nondischargeable domestic support obligation. As explained above, § 507(a) sets forth a list describing the priority of expenses and claims in a bankruptcy case, and high on that list are allowed unsecured claims for domestic support obligations. Dr. Kunau filed her proof of claim and now argues that, as a domestic support obligation, her claim should receive this priority status. Trustee disputes this assertion.

The crux of the issue before this Court is whether the default judgment preclusively determined the priority of Dr. Kunau's claim, despite the fact that the chapter 13 Trustee was not a party to the adversary proceeding.

It appears to the Court that Dr. Kunau is attempting to assert issue preclusion rather than claim preclusion. Claim preclusion applies when the exact same cause of action is involved in the prior proceeding. In the adversary proceeding, the cause of action was nondischargeability under § 523(a)(5). In contrast, the cause of action here is whether Dr. Kunau's claim is entitled to priority as a domestic support obligation under § 507(a). Those are different causes of action, so claim preclusion is not applicable.

MEMORANDUM OF DECISION – 12

"Under collateral estoppel [or issue preclusion], once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. at 153 (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S. Ct. 645, 649, 58 L. Ed. 2d 552 (1979); Scott, *Collateral Estoppel by Judgment*, 56 HARV. L. REV. 1, 2–3 (1942); RESTATEMENT (SECOND) OF JUDGMENTS § 68 (Tent. Draft No. 4, Apr. 15, 1977)).

For issue preclusion to apply: (1) the issue must be identical to one alleged in prior litigation; (2) the issue must have been "actually litigated" in the prior litigation; and (3) the determination of the issue in the prior litigation must have been "critical and necessary" to the judgment. *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1320 (9th Cir. 1992). All elements must be present to apply issue preclusion. The Court finds that the "actually litigated" element is missing.

In the Ninth Circuit, default judgments are generally not given collateral estoppel effect because the issues were not actually litigated. *Cunningham v. Kinini (In re Kinikini)*, 2019 WL 4580364, at *3 (citing *United States v. Gottheiner (In re Gottheiner)*, 703 F.2d 1136, 1140 (9th Cir. 1983)); *Internal Revenue Serv. v. Palmer (In re Palmer)*, 207 F.3d 566, 568 (9th Cir. 2000). In some instances, default judgments will be given collateral estoppel effect if the party actually participates in the litigation and is given a fair opportunity to defend the allegations on the merits but chooses not to. *See id.* (holding that default judgment could be given collateral estoppel effect because the

MEMORANDUM OF DECISION − 13

defendant had appeared in the litigation to defend himself and participated almost for two years before a default judgment was entered). Those circumstances are not present here. No party appeared to defend against the allegations raised in the adversary proceeding, so the issue of whether Dr. Kunau's claim is a domestic support obligation as defined by § 101(14A) for the purposes of § 523(a)(5) was never actually litigated. Therefore, in this § 507(a) context, the Court declines to give preclusive effect to the default judgment entered in the adversary proceeding on the issue of whether Dr. Kunau's claim is a domestic support obligation as defined by § 101(14A).

     *2.    Determination on the Merits*

     Because res judicata does not apply, the Court must determine whether Dr. Kunau's claim is a domestic support obligation entitled to priority under § 507(a), which provides:

> (a) The following expenses and claims have priority in the following order:
>> (1) First:
>>> (A) Allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition in a case under this title, are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative, without regard to whether the claim is filed by such person or is filed by a governmental unit on behalf of such person, on the condition that funds received under this paragraph by a governmental unit under this title after the date of the filing of the petition shall be applied and distributed in accordance with applicable nonbankruptcy law.

§ 507(a)(1)(A).

MEMORANDUM OF DECISION − 14

As noted above, the term "Domestic Support Obligation" as used in § 507 is defined by § 101(14A):

> (14A) The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—
> > (A) owed to or recoverable by—
> > > (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
> > > (ii) a governmental unit[.]

§ 101(14A).

As this Court has already observed, the same definition of "domestic support obligation" is used for both § 507(a) and § 523(a)(5). The Ninth Circuit has held that the application of § 507(a) is coincidental with the application of § 523(a)(5). *Beaupied v. Chang (In re Chang)*, 163 F.3d 1138, 1142 (9th Cir. 1998). Therefore, the analysis to determine whether a claim is nondischargeable under § 523(a)(5) informs the Court's analysis when determining whether a claim is entitled to priority under § 507(a). *Friedkin v. Sternberg (In re Sternberg)*, 85 F.3d 1400, 1405 (9th Cir. 1996), *rev'd on other grounds*; *Murray v. Bammer (In re Bammer)*, 131 F.3d 788 (9th Cir. 1997)); *In re Nelson*, 451 B.R. 918, 921 (Bankr. D. Or. 2011).

According to the magistrate court's order, Dr. Kunau was appointed as guardian ad litem pursuant to Idaho Code §§ 32-704(4), 32-717(1), and Idaho Rule of Family Law Procedure 114. Amended Order for Appointment of Guardian Ad Litem, Dkt. No. 224, Ex. B. That order prescribes her roles and duties, and provided she was to have notice of

MEMORANDUM OF DECISION – 15

and access to all applicable pleadings, motions, and memoranda relevant to the minor children or their parents. *Id*. at ¶ 2. She was also to receive notice of all hearings, staffing, investigations, dispositions, treatment plans, depositions, or other proceedings concerning the children. *Id*. at ¶¶ 6–8. Dr. Kunau was permitted to communicate with legal counsel who were participating in the case to facilitate fact and record gathering, scheduling, and investigation. *Id*. at ¶ 9. She could confer with the children and their parents and make unannounced parental home visits. *Id*. at ¶ 5. Throughout the appointment, Dr. Kunau was to act in the best interest of the children. *Id*.

In appointing counsel for the guardian ad litem, the magistrate court provided that the Debtor herein, Mr. Tracy, was to be responsible for 100% of the cost of the attorney of the guardian ad litem as well as the cost of the guardian ad litem. Order for Appointment of Attorney for Guardian ad Litem, Dkt. No. 224, Ex. C, ¶ 6. The Court, however, need not reach the issue of whether Dr. Kunau's attorney's fees are domestic support obligations. The Court determined above that most of the claim is secured by the judgment lien. Dr. Kunau's attorney only incurred fees before that judgment was entered, so those fees are included in the secured portion of the claim. Claims Reg. 1-1, 1-2, and 1-3. The amount in controversy here, for the purposes of § 507(a)(1)(A), is $272.94: the unsecured amount of fees Dr. Kunau incurred between entry of the judgment and the filing of the chapter 7 petition.

Dr. Kunau argues that fees for guardians ad litem are permitted by Idaho statute. The statutes and rules to which the magistrate court cited in both of the orders described

MEMORANDUM OF DECISION – 16

above, Idaho Code §§ 32-704(4) and 32-717(1) and Idaho Rule of Family Law Procedure 114, do not clearly stand for such proposition. Idaho Code § 32-704(4) provides that an attorney may be appointed to represent children and be reimbursed "for costs, fees, and disbursements." Not only was Dr. Kunau's counsel appointed to represent her rather than the minor children, as stated above, no attorney fees are at issue. Furthermore, Idaho Code § 32-717(1) does not mention fees for guardians ad litem whatsoever, nor does Idaho Rule of Family Law Procedure 114.

While Dr. Kunau correctly asserts that Idaho Rule of Family Law Procedure 112 provides for the appointment of a guardian ad litem, that rule is silent as to fees. In fact, although the magistrate court cited to Idaho statutes in order to *appoint* Dr. Kunau as guardian ad litem, conspicuously missing from either of those orders is any statutory authority providing for the fees of the guardian ad litem. It appears to this Court that the basis for the fee award to Dr. Kunau stems exclusively from the magistrate court's Order for Appointment of Attorney for Guardian ad Litem. Dkt. No. 224, Ex. C, ¶ 6.

To determine whether a particular debt falls within the § 523(a)(5) exception to discharge, a court considers whether the debt is actually in the nature of support. *Beaupied v. Chang (In re Chang)*, 163 F.3d at 1140. Although state law is one factor to consider, this is ultimately a factual determination made by the bankruptcy court as a matter of federal bankruptcy law. *Id*. Because the Ninth Circuit has held that application of § 523(a)(5) is coincidental with the application of § 507(a), this Court sees no reason

MEMORANDUM OF DECISION − 17

to depart from this framework when determining whether a debt is actually in the nature of support for the purposes of establishing priority under § 507(a).

*Beaupied v. Chang (In re Chang)* is on point. That case involved a bitter custody dispute. When one party accused the other party of sexually abusing the minor child, a California court appointed a guardian ad litem for the minor child. After the Court ordered the parties to pay their share of the guardian ad litem fees, one of the parties filed a chapter 13 petition. The guardian ad litem filed a claim and argued that the fees were nondischargeable pursuant to § 523(a)(5) and entitled to priority status under § 507(a) as a domestic support obligation. The bankruptcy court found in favor of the guardian ad litem, but the Ninth Circuit BAP reversed the bankruptcy court's decision. *Id*.

On appeal, the Ninth Circuit reversed the BAP and affirmed the bankruptcy court's decision, holding that the bankruptcy court correctly determined that the guardian ad litem fees were in the nature of support of the minor child. The Ninth Circuit looked to state law and cited several California statutes that purportedly permit California state courts to appoint and provide for the compensation of a guardian ad litem, neutral experts, and mental health professionals, in consideration of the minor child's best interests, including Cal. Fam. Code §§ 3150, 3153, 3190, 4062. Interestingly, those California statutes are very similar to the Idaho statutes cited to by Dr. Kunau and the magistrate court's order.

Similarly, the Court finds that the guardian ad litem fees are in the nature of "support" within the definition of § 101(14A). It is clear from the magistrate court's order

MEMORANDUM OF DECISION − 18

appointing Dr. Kunau as guardian ad litem that she was required to act in the best interest

of the children through her duties and responsibilities described therein. Ninth Circuit

case law clearly provides that guardian ad litem fees can be "domestic support

obligations" as defined by § 101(14A). Thus, Dr. Kunau's guardian ad litem fees are

domestic support obligations as defined in § 101(14A).[4]

It makes no difference that Debtor's obligation was to be paid to a third party

rather than to his ex-spouse or child directly. *Beaupied v. Chang (In re Chang)*, 163 F.3d

at 1141 ("Fees paid to third parties on behalf of a child or former spouse can be as much

for . . . support as payments made directly to [the former spouse or child]. . . . We hold in

the instant case that the identity of the payee is less important than the nature of the

debt.") (internal citations and quotations omitted). Accordingly, the debt is in the nature

of support and the unsecured portion of Dr. Kunau's claim for pre-petition work, totaling

$272.94, is entitled to priority status pursuant to § 507(a)(1).

---

[4] The passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA")
did not change the substance or core meaning of the term "domestic support obligation." *Rivera v.
Orange Cty. Prob. Dep't*, 832 F.3d 1103, 1106–07 (9th Cir. 2016) ("This definition does not change the
substance or core meaning of the term ["domestic support obligation."] . . . BAPCPA carries forward the
core purpose of the [domestic support obligation] exception by ensuring that bankruptcy will not hinder
the enforcement of family obligations in circumstances in which the government's family support
infrastructure has intervened on a spouse's, former spouse's, or child's behalf.").

MEMORANDUM OF DECISION − 19

D.    Post-Petition, Pre-Conversion Claims

Dr. Kunau argues that she is entitled to amend her claim to include any fees that arose after Debtor filed his chapter 7 petition but before the case was converted to chapter 13. In other words, she admits that these amounts were incurred after the chapter 7 petition was filed. The questions to be addressed by this Court then are the following: (1) does the bankruptcy code treat the post-petition claims incurred after the petition and before the conversion as a pre-petition claim under § 348; or (2) does § 1305(a)(2) permit the debtor to treat the post-petition claim as a pre-petition claim now that the claim is filed by Dr. Kunau? Unfortunately for Dr. Kunau, neither avenue is available to her in this chapter 13.

   1.    *Section 348 does not treat Dr Kunau's claim as a pre-petition claim*

Conversion of a case does not effect a change in the date of the filing of the petition or the order for relief except as provided for in §§ 348(b) or (c). § 348(a).[5] Nothing in §§ 348(b) or (c), however, effects a change in the date of the filing of the petition upon conversion.

This case was converted from chapter 7 pursuant to § 706. Dkt. Nos. 97 and 177. Pursuant to § 502(b), this Court must determine the amount of the claim as of the date of the filing of the chapter 7 petition. Dr. Kunau's argument is further undermined by

---

[5] Although § 348(d) does not apply in a chapter 13 case converted under § 706, nothing in the Code suggests that § 348(a) does not apply.

MEMORANDUM OF DECISION − 20

§ 348(d), which expressly provides that "A claim against the estate or the debtor that arises after the order for relief but before conversion *in a case that is converted under section 1112, 1208, or 1307 of this title* . . . shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition." Conspicuously missing from § 348(d), is how claims that arise after the order for relief but before conversion under § 706 should be treated.

A creditor's claim for unpaid domestic support obligations thus is limited to support that was due to the creditor no later than when the bankruptcy petition was filed pursuant to § 502(b). That date is the date of the filing of the chapter 7 petition, not the conversion date. But this does not end the Court's inquiry because Dr. Kunau has raised § 1305(a)(2) to support her position.

2.    *Section 1305(a)(2) does not support Dr. Kunau's position.*

Section 1305(a)(2) permits an entity that holds a claim against the debtor to file a proof of claim that is a consumer debt, that arises after the date of the order for relief under chapter 13, and that is for property or services necessary for the debtor's performance under the plan.

a.    *A domestic support obligation is not necessarily automatically a consumer debt.*

First, although parties do not dispute whether the debt is a consumer debt, the Court has reservations about unquestionably characterizing a domestic support obligation as a consumer debt. Section 101(12) defines debt as a "liability on a claim." Section 101(14A)(A)(i) defines "domestic support obligation" as "a debt that accrues before, on,

MEMORANDUM OF DECISION − 21

or after the date of the order for relief in a case under this title . . . that is . . . owed to or

recoverable by . . . a spouse, former spouse, or child of the debtor or such child's parent,

legal guardian, or responsible relative[.]" Section 101(8) defines "consumer debt" as "a

debt incurred by an individual primarily for a personal, family, or household purpose." It

appears, to this Court, that a "domestic support obligation" and a "consumer debt" can, at

the very least, be two different kinds of debt.[6] Because there are other grounds upon

which to deny Dr. Kunau's claim for post-petition, pre-conversion costs and fees, the

Court need not reach a conclusion with respect to this element.

> b. *The debt did not arise after the date of the order for relief and, thus,*
> *not allowed under § 1305(a).*

In § 1305(a)(2), the "date of the order for relief" in the chapter to which a case has

been converted under § 706 means the conversion date. § 348(b). In this case,

accordingly, the date of the order for relief in Debtor's chapter 13 case is the date that the

case converted. Contrary to Dr. Kunau's assertions, however, while § 1305(a)(2)

addresses allowable post-petition debts arising after the date of the order for relief in a

chapter 13, it does not address whether claims arising between the filing of a chapter 7

petition and the conversion to chapter 13 are allowable in the chapter 13 case. 3 Keith M.

Lundin, CHAPTER 13 BANKRUPTCY § 8.30, at 8–48, 49 (1994)).  In other words, an entity

---

[6] In fact, there is authority distinguishing between the two. *See Jones v. N. Carolina Dep't of Child Support Enf't through VA Div. of Child Support Enf't*, No. CIV.A. 7:07CV00564, 2008 WL 523857, at *2 (W.D. Va. Feb. 26, 2008), *aff'd sub nom. In re Jones*, 280 F. App'x 298 (4th Cir. 2008) ("[Debtor's] debt is not a consumer debt but rather, as has been found by a court having concurrent jurisdiction to resolve the matter, an undischarged domestic support obligation.").

MEMORANDUM OF DECISION – 22

holding a claim against the debtor can only file a claim under § 1305(a) for debts that

arose after the date of the order for relief or, in this case, the conversion date.

Dr. Kunau offered no evidence that any of the costs or fees incurred by either

herself or her counsel arose after the conversion date. *See* Claims Reg. 1-3, p. 4.

> i. *Even if Dr. Kunau's costs and fees arose after conversion,
> § 1305(a)(2) is subject to the conditions set forth in § 502,
> which disallows post-petition domestic support obligations.*

Section 1305(a) permits post-petition claims in a chapter 13 case and provides that

such claims will be allowed or disallowed "the same as if such claim had arisen before

the date of the filing of the petition." Allowance or disallowance of claims under

§ 1305(a), however, are subject to the conditions set forth in § 502(b). *See* H.R. REP. NO.

595, 95th Cong., 1st Sess. 427–28 (1977), U.S. CODE CONG. & ADMIN. NEWS 1978, pp.

5963, 6383 ("[Section 1305(b)] requires that such claims *be allowed or disallowed under*

*section 502 as are all other claims*, but specifies that they are to be determined as of the

date of allowance, rather than as of the date of the petition.") (emphasis added); *see also*

*§ 1305. Filing and allowance of postpetition claims*, 10 NORTON BANKR. L. & PRAC. 3d

11 U.S.C. § 1305 (quoting Senate Report, Reform Act of 1978) ("[Section 1305(b)]

prescribes that [§ 502] governs the allowance of section 1305(a) claims, except that its

standards shall be applied as of the date of allowance of the claim, rather than the date of

filing of the petition.").

Section 502(b) provides that the court shall determine the amount of a claim as of

the date of the filing of the petition and allow such claim in such amount, except where

MEMORANDUM OF DECISION – 23

such claim is for a debt that is unmatured[7] on *the date of the filing of the petition* and that is excepted from discharge under section 523(a)(5). § 502(b)(5). This Court has already excepted from discharge Dr. Kunau's claim pursuant to § 523(a)(5).

In other words, § 502(b)(5) limits a claim against a debtor's estate for unpaid domestic support obligations due to the creditor no later than when the bankruptcy petition was filed. *In re Peel*, 725 F.3d 696, 699 (7th Cir. 2013) (citing § 502(b)(5); 4 *Collier on Bankruptcy* ¶ 502.03[6][a], pp. 502–41 to 502–42 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.2012)); *see also* § 48:35. *Postpetition alimony, maintenance, or support (Code § 502(b)(5))*, 3 NORTON BANKR. L. & PRAC. 3d § 48:35 ("Postpetition alimony, maintenance, or support claims are disallowed. Since these claims are nondischargeable, they are to be paid from property acquired by the debtor after the filing of the petition. Claims based on back payments for alimony, maintenance, and support due at the time of the filing of the petition are allowable.").[8]

---

[7] Neither of the parties addressed this but the magistrate court has never terminated Dr. Kunau's appointment.

[8] Other case law is in accord with this interpretation of § 502(b)(5). *See In re Werth*, 468 B.R. 412, 413 (Bankr. D. Kan. 2012) ("The Bankruptcy Code provides special treatment for domestic support obligations; however, such treatment does not include earmarking pre-petition assets for post-petition obligations. Only a pre-petition support obligation can be a claim against the estate. Post-petition support obligations are to be paid out of the debtor's post-petition income, not from estate property."); *Coggin v. Coggin (In re Coggin)*, 30 F.3d 1443, 1452 (11th Cir. 1994) *abrogated on other grounds*, *Kontrick v. Ryan*, 540 U.S. 443, 124 S. Ct. 906, 157 L. Ed. 2d 867 (2004) ("Congress clearly intended that post-petition support obligations were to be paid out of the [d]ebtor's post-petition income, and not from property of the Estate.").

MEMORANDUM OF DECISION – 24

> c.    The debt is not for property or services necessary for Debtor's
>        performance under the plan.

Section 1305(a)(2) permits creditors to file a proof of claim for post-petition debts if the claim is for property or services necessary for the debtor's performance under the plan. "Whether the property or services rendered were necessary for the debtor's performance under the plan is a factual question, which must be examined on a case by case basis." *In re Perkins*, 304 B.R. 477, 482 (Bankr. N.D. Ala. 2004).

There was no evidence introduced at the hearing regarding whether or not the additional sums incurred after the petition were property or services necessary for Debtor's performance under the plan. Although debtors must pay all amounts that are required to be paid under a domestic support obligation and that first become payable after the date of the filing of the petition before a plan is confirmed pursuant to § 1325(a)(8), that does not necessarily mean that those same domestic support obligations are necessary for the debtor's performance under the plan after the plan is confirmed, particularly because those obligations are required to be paid off before the debtor begins to perform under the plan.

Courts that have interpreted this provision generally permit these claims for debts that were unforeseeable, unavoidable, or for certain medical expenses. *In re Perkins*, 304 B.R. at 482 (holding that medical expenses for minor child incurred post-petition were necessary for debtor's performance under the plan because there is a direct correlation between the health of a child and a parent's ability to work and successfully fund a chapter 13 plan); *In re Sims*, 288 B.R. 264, 266–67 (Bankr. M.D. Ala. 2003) (holding that

MEMORANDUM OF DECISION – 25

medical expenses to treat debtor post-petition were essential to debtor's ability to perform under the plan); *see also In re Trentham*, 145 B.R. 564, 569 n. 7 (Bankr. E.D. Tenn. 1992); *In re Pritchett*, 55 B.R. 557, 559 (Bankr. W.D. Va. 1985); *In re Thornton*, 21 B.R. 462, 464 (Bankr. W.D. Va. 1982).

The legislative history is in accord. H.R. REP. NO. 95–595, at 427–428 ("[Section 1305(a)] permits the filing of a proof of a claim against the debtor . . . that arises after the date of the filing of the petition for property or services that are necessary for the debtor's performance under the plan, such as auto repairs in order that the debtor will be able to get to work, or medical bills.").

In this case, the Court finds that the fees incurred after the filing of the petition are not necessary for the Debtor's performance under the plan. The fees that were incurred were not unforeseeable, as the appointment order was in place pre-petition. Nor was the debt incurred to cover medical bills for treatment that was required for Debtor to be able to work and fund a plan. Moreover, the domestic support obligations incurred between the filing of the chapter 7 petition and conversion must be paid off before any plan can be confirmed under § 1325(a)(8).[9] Simply put, it is not clear to the Court how the fees

---

[9] Not only is Dr. Kunau still entitled to her fees that arose post-petition from post-petition assets, but § 1328(a)(8) ensures that Dr. Kunau will recover those fees relatively quickly. Before a plan is confirmed, Debtor must demonstrate that he "has paid all amounts that are required to be paid under a domestic support obligation and that first become payable after the date of the filing of the petition if the debtor is required by a judicial or administrative order, or by statute, to pay such domestic support obligation[.]" § 1325(a)(8).

MEMORANDUM OF DECISION − 26

incurred by Dr. Kunau even assist Debtor, let alone how those fees are necessary, in performing his plan.

Accordingly, Dr. Kunau is entitled to assert a claim against the estate for all fees and costs due to her before Debtor commenced his chapter 7 petition. Her claim will be disallowed to the extent that it includes any costs and fees accruing after the chapter 7 petition date.

The total of that amount, $17,660.38, is not in dispute. *In re Tracy*, 20-40074-JMM Claims Reg. 1-1 (Dr. Kunau's Original Claim), Claims Reg. 1-2, p. 4 (Dr. Kunau's First Amended Claim); Claims Reg. 1-3, p. 4 (Dr. Kunau's Second Amended Claim). *See also* Trustee's Amended Objection to Dr. Kunau's Claim, Dkt. No. 208, p. 2.[10] Accordingly, Dr. Kunau's claim will be allowed in the amount of $17,660.38. Of that amount, $17,387.44 is secured by the judgment lien. The remaining portion, $272.94, is unsecured but entitled to priority status pursuant to § 507(a)(1)(A).[11]

---

[10] Although Trustee raised an argument that Dr. Kunau calculated her claim using a higher interest rate than that allowed by Idaho statute, Dr. Kunau explained that the claim form itself only allows entry of an interest rate up to the hundredths place. The Idaho statutory rate of interest is 7.125%, so it was not possible for Dr. Kunau to enter numbers out to the thousandths place behind the decimal. Dr. Kunau provided a detailed itemization in her original claim and her amended claims showing that the total amount was calculated using the correct statutory interest rate.

[11] Section 502(d) provides that this Court shall disallow any claim of any entity from which property is recoverable under § 550, of this title or that is a transferee of a transfer avoidable under § 547. Trustee has commenced an adversary proceeding against Dr. Kunau to avoid the judgment lien from the underlying state court case pursuant to § 547 and recover the value of the lien for the benefit of the estate pursuant to § 550. *McCallister v. Kunau (In re Tracy)*, 21-08018-JMM. Those issues are not presently before the Court and neither party raised those issues here. At a status hearing in the adversary proceeding, the parties expressed their desire that the Court resolve the issues addressed herein before the adversary proceeding continued as it may resolve some of those other issues. Accordingly, Dr. Kunau's claim is allowed as stated herein subject to the outcome of the adversary proceeding.

MEMORANDUM OF DECISION – 27

### *Conclusion*

For the reasons set forth herein, Trustee's objection will be granted in part and denied in part. Dr. Kunau's claim, Amended Claim Number 1-3, will be allowed in the amount of $17,660.38, of which $17,387.44 is secured and $272.94 is unsecured but is entitled to priority status as a domestic support obligation pursuant to § 507(a)(1)(A).

The Court directs Dr. Kunau to submit a proposed order reflecting the conclusions reached in this decision for entry by the Court.

DATED:  September 9, 2021

_____
JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION – 28